UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SIMMONS MARINE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO.05-1303** |
| **ENERVEST OPERATING, LLC, ET AL.** | **SECTION "K" (3)** |

## ORDER

Before the Court is plaintiffs' Motion To Remand (Rec. Doc. 5)**.**  Plaintiffs are Simmons Marine, LLC ("Simmons Marine"), Richard Blink, and Arlene Griffice, Jr.  Defendants, Oak Services, Inc. of Lafayette, Louisiana ("Oak Services") and Enervest Operating, LLC ("Enervest") filed an opposition to plaintiffs' motion.  The motion was taken on the briefs.  Having reviewed the memoranda, relevant law, and the pleadings, the Court denies plaintiffs' motion.

## BACKGROUND

Plaintiffs, Simmons, Richard Blink, and Arlen Griffice filed suit in the 17th Judicial District Court for the Parish of Lafourche against Enervest, Oak Services, and Baker/MO Services ("Baker").  On or about March 5, 2004, plaintiffs were working for Simmons Marine, operating a oyster vessel owned by Simmons.  While dredging for oysters in Hackberry Bay in the Parish of Lafourche, the dredge struck a natural gas pipeline.  The pipeline and the field were

1

owned by Enervest. The collision caused the pipeline to rupture and release natural gas. Plaintiffs seek recovery for their alleged injuries as a result of the accident against Enervest as owner and operator of the filed, as well as Baker and Oak Services as additional operators of the field. Enervest and Baker are foreign corporations and Oak Services is a domestic corporation doing business in Louisiana. Enervest removed this matter to federal court based on the improper joinder of Oak Services.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), an action filed in state court may be removed to federal court if the action is one over which the federal court has subject matter jurisdiction. The burden of establishing jurisdiction is on the party seeking removal. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993). In the motion to remand, the non-movant carries a heavy burden in establishing fraudulent joinder and must demonstrate it by clear and convincing evidence. *Id.* at 814. In an *en banc* decision, the Fifth Circuit departed from its use of the term "fraudulent joinder" and adopted the term "improper joinder, " noting there is no substantive difference between the two terms. *Smallwood v. Illinois Central Railroad* Co., 385 F.3d 568, 571, n.1(5th Cir.2004). The Court emphasized the purpose of the improper joinder inquiry is to determine the appropriateness of joinder, not the merits of the case. *Id*. at 574. There are two ways to establish improper joinder: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id*. (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003)). In the instant matter, the second way to establish improper joinder is before the Court. The appropriate test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state

defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (*citing Travis*, 326 F.3d at 646-47).  The Fifth Circuit in *Travis* further explained: "[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.  If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law." *Travis*, 326 F.3d at 647.  This possibility that state law may impose liability, however, must be reasonable, not merely theoretical. *Id* at 648.

A district court may resolve improper joinder claims in two ways.  The first is that a court may conduct a Rule 12(b)(6) type analysis, looking initially at the allegations of the complaint to determine whether the plaintiff has alleged a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573.  The second way involves those cases in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. *Id*.  In these cases, hopefully few in number, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Id*.  The Fifth Circuit cautioned "that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant . . . [a]ttempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits." *Id*. at 574-75.  Furthermore, district courts should resolve all disputed questions of fact and substantive law in favor of the plaintiff. *Jackson v. Pneumatic Prod. Corp*., 2001 WL 238214, at *1 (E.D.La.2001).  Finally, "[i]f the right to remove is doubtful, the case should be remanded." *Sullivan v. Gen-Corp, Inc*., 1995 WL 321743, at *2

(E.D.La. 1995) (Duval, J.)(quoting *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 939 (E.D.N.Y.1992)).

**ANALYSIS**

The issue before the Court is whether Oak Services owed a duty to the plaintiffs herein for the allegations asserted by the plaintiffs against Oak Services. Under Louisiana Civil Code article 2315, the primary question that must be asked is whether the defendant owed a duty to the plaintiff. *See* La. Civ.Code Art. 2315; *Mart v. Hill,* 505 So.2d 1120 (La.1987). Duty is a question of law. *Roberts v. Benoit*, 605 So.2d 1032 (La.1991). The determination whether or not a particular defendant owed a duty to a particular plaintiff is imperative because "[i]t is a fundamental principle of tort law that there can be no negligence unless there is first a duty." *Kerr-McGee Corp. v. Ma-Ju Marine Services,* 830 F.2d 1332, 1340 (5th Cir.1987). "Generally, a person owes a duty to exercise reasonable care to protect others against the foreseeable risks of his misconduct." Frank L. Maraist and Thomas C. Galligan, *Louisiana Tort Law,* § 5-1 at 101 (1996). "The particular facts and circumstances of each individual case determine the extent of the duty and the resulting degree of care necessary to fulfill that duty." *Yocum v. City of Minden,* 649 So.2d 129, 132 (La. App. 2 Cir. 1/5/95)(citing *Socorro v. City of New Orleans*, 579 So.2d 931 (La.1991)). Courts have looked to the express provisions of the contract between the parties to determine a duty of care. *Yocum*, 649 So.2d at 132; *see also, Black v. Gorman-Rupp*, 791 So.2d 793, 795-96 (La. App. 4 Cir. 7/11/01). In this case, there is no contract between plaintiffs and Oak Services, Inc.; thus, the Court must look to the duty imposed upon Oak Services by the Agreement between Oak Services and Enervest.

The negligence claim against Oak Services brought by the plaintiffs are due to Oak Services' alleged failure to 1) properly bury the pipeline; 2) properly and visibly mark the pipeline; 3) warn mariners of the pipeline's existence and location; 4) take proper precautions to warn mariners; 5) take proper precautions to prevent such an accident; 6) train, instruct, and supervise its employees to warn mariners of the pipelines' existence and location; 7) other acts of negligence.  *See* Petition for Damages ¶ 8.

On January 2, 2004, Oak Services entered into a contract with Enervest to perform certain services with respect to several oil and gas fields.  *See* Enervest's Opp., Exhibit A, Master Service Agreement between Oak Services and Enervest.  The Agreement provides: "Company [Enervest] may from time to time request Contractor [Oak Services] to perform certain work hereunder including, but not limited to, acidizing, fracturing, cementing, sand control, completion tools, completion fluids, coil, tubing, nitrogen, mud, line hangers and miscellaneous pressure pumping (the "Services").  *Id*.  Specifically, Oak Services performed the repair of the infield 2 7/8" diameter gas lift line after the rupture which is the subject of the litigation herein *See* Enervest's Opp., Exhibit B, Field Ticket for Services.  Oak Services states in its Opposition that its only work to the pipeline in question occurred after the date of the incident.  Plaintiff do not provide any evidence to the contrary.

Plaintiffs argue that Oak Services was an operator of the field and pipeline in question and had a much more expansive role than defendants argue.  Plaintiffs contend that according to Enervest's answers to interrogatories, Oak Services was not merely a company repairing the pipeline subsequent to the accident, but was in charge of operating the Bay De Chene Field, and,

thus, were operators of the pipe line in question.[1]  In plaintiffs' reply memorandum to defendants' oppositions, plaintiffs also provide the "Supervisors Accident/Incident Investigation Report" filled out by one of Oak Services' employees the day of the accident.  Plaintiffs argue the report, along with Enervest's discovery answers, suggests that Oak Services assumed a duty to operate the field which includes a duty to maintain, bury, and/or reasonably mark the gas line.  Alternatively, plaintiffs argue that if there is a factual dispute as to the role of Oak Services, that factual disputes are resolved in favor of the remanding party.  *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.1990).

---

[1] Evervest was asked to identify "any and all persons and/or entities in charge of maintenance and upkeep of the Enervest Pipeline which is the subject of this litigation."  Enervest responded in pertinent part: "Enervest objects to this interrogatory as being overly broad, unduly burdensome, and seeking information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence . . . Subject to and without waiving its specific and general objections and reservations, Baker and Oak Services are in charge of operating the Bay De Chene Field on behalf of Enervest, including the infield 2 7/8" diameter gas lift line that was damaged in the incident that is the subject of this instant litigation."  *See* Interrogatory No. 10 and Response to Interrogatory No. 10, Exhibit 2, Plaintiff's Mtn. to Remand.  In another interrogatory Enervest was asked to "identify all persons and business entities responsible for and involved in the burying, upkeep, maintenance, replacement and repair work concerning the Enervest pipeline which is the subject matter of this litigation."  Enervest responded: "See Responses to Interrogatory No.10 with the respect to the irrelevancy of any maintenance, upkeep, inspection and repairs of the infield gas lift line that may have occurred prior to the occurrence of the incident that is the subject of the instant litigation. Subject to and without waiving its specific and general objections and reservations, Baker and Oak Services are in charge of operating the Bay De Chene Field on behalf of Enervest, including the infield 2 7/8" diameter gas lift line that was damaged in the incident that is the subject of the instant litigation. Additionally and subject to and without waiving its specific and general objections and reservations, generally, the field operators visually survey the surface of the water daily, in addition to monitoring the pressure in the various gas lift lines and pipelines in use in the Bay De Chene Field, in order to determine possible leaks or other abnormalities.  If a problem is determined to exist, the field operators initiate repair and maintenance thereof by contacting the necessary repair personnel.  Repair personnel vary according to repairs required and can include divers, constructions crews, supervisors, pressure testers and various providers of equipment."  *See* Interrogatory No. 12 and Response to Interrogatory No. 12, Exhibit A, Plaintiffs' Reply Memorandum in Opposition to Motion To Remand.

As to its answer to Interrogatory No. 10, Enervest argues it is true that Oak Services is in charge of operating the Bay De Chene field; however, Oak Services was not an 'operator' as that term is sometimes used to describe a company operating an oil and gas well with broad and far ranging discretionary duties. Defendant further argues that at the time the answer to the interrogatory was given, the specific delineation of duties between Baker and Oak Services was not specifically at issue and was not contemplated when the answer was drafted. As to Oak Services' duty, defendants argue Oak Services' only connection to the gas lift line is its contractual relationship with Enervest, and no where in the Agreement is Oak Services to bury the gas lift line, mark the gas lift line, warn mariners of its existence, or to instruct its employees to properly perform all of these functions. Enervest argues that the only duty of care owed by Oak Services to the plaintiffs is to be found in the contractual relationship, citing to *Yocum v. City of Minden* to support its position. In *Yocum*, the Court determined whether an engineering firm had a duty to warn certain plaintiffs about an unreasonably dangerous slope of a sewer pipe excavation ditch. 649 So.2d 129, 131-132 (La. App. 2 Cir. 1/5/95). The Court held that the engineering firm did not have a duty to warn the plaintiffs because the contract with the city "clearly defines and limits Hardin's duties" and that the firm "did not breach any legal duty bestowed upon him via the contract." *Id*. Hardin was the resident project representative and engineer for the engineering firm.

The Court agrees with defendants herein. Based on the Agreement between Enervest and Oak Services, there is nothing in the contract that would create a duty for Oak Services to bury the pipeline, mark the pipeline and warn mariners of the pipeline's existence. Elroy L. Ardoin, Health, Safety and Environmental Coordinator for Enervest, stated in his affidavit, that the

services of Oak Services were performed on a project by project basis, as requested by Enervest. *See* Enervest's Opp., Exhibit 1, paragraph 3.  The day to day operation of the Bay De Chene Field was and is performed by Baker, with Oak Services performing specific projects on an as needed basis.  *Id*.  Mr. Ardoin specifically stated that it was not the duty of Oak Services to perform any of the alleged duties or actions stated in the Petition pursuant to the terms of the Agreement.  *Id*. at paragraphs 4-7.  Furthermore, the Court is not persuaded that defendant's responses to the interrogatories or the accident report create a duty on the part of Oak Services to bury and mark the pipeline and to warn mariners.   The Court finds that Oak Services, Inc. of Lafayette, Louisiana was improperly joined, as there is no reasonable basis for this Court to predict that the plaintiffs might be able to recover against Oak Services for the negligence claims brought against it.

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that plaintiff's Motion to Remand (Rec. Doc. 5) is **DENIED**.

New Orleans, Louisiana, this     3rd    day of August, 2005.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**